UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧

**KEITH HANCOCK, TAMERA THOMAS, and JASON DESSINGUE,**

**Plaintiffs,**

**-v-** **1:13-CV-1184 (NAM/CFH)**

**THE COUNTY OF RENSSELAER, JAMES KARAM, ANTHONY PATRICELLI, JACK MAHAR, ELAINE YOUNG, and DAVID HETMAN,**

**Defendants**.

✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧✧

APPEARANCES:

Law Offices of Elmer Robert Keach, III, P.C.
Elmer R. Keach, III, Esq., of counsel
One Pine West Plaza - Suite 109
Albany, New York 12205
Attorney for Plaintiffs

Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.
James A. Resila, Esq., of counsel
William C. Firth, Esq., of counsel
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants County of Rensselaer, David Hetman, and Jack Mahar

Luibrand Law Firm, PLLC
Kevin A. Luibrand, Esq., of counsel
950 New Loudon Road
Latham, New York 12110
Attorney for Defendant Elaine Young

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

In this action pursuant to 42 U.S.C. § 1983, the amended complaint (Dkt. No. 60) contains

a single cause of action claiming that defendants, while acting under color of state law, infringed plaintiffs' Fourteenth Amendment rights to privacy in their medical records. The action has been discontinued against defendants James Karam and Anthony Patricelli (Dkt. Nos. 120, 141). The remaining defendants move for summary judgment (Dkt. Nos. 122, 123). As set forth below, the summary judgment motion by Elaine Young (Dkt. No. 122) is granted; the summary judgment motion by defendants County of Rensselaer, Jack Mahar, and David Hetman (Dkt. No. 123) is granted; and the case is dismissed with prejudice.

## AMENDED COMPLAINT

With respect to the remaining defendants, the amended complaint (Dkt. No. 60) states that at the relevant times, defendant David Hetman was a Lieutenant at the Rensselaer County Jail ("Jail"), which is overseen by the County Sheriff's Department. Defendant Jack Mahar ("Sheriff Mahar") was County Sheriff, and defendant Elaine Young ("Nurse Young") was a Registered Nurse employed at the Jail as Nursing Supervisor. In order to facilitate continuity of care for Jail inmates, nearby Samaritan Hospital ("Samaritan") provided Jail nursing staff with access to its electronic medical records via a computer terminal located at the Jail nurses' station. The nursing staff was authorized to access only inmate records and to view them only for authorized purposes. Nurse Young was responsible to secure the password that provided access to these records. Plaintiffs claim that she failed to keep this password secure and instead taped it to a computer console in her office or left it in a drawer.

At the relevant times, plaintiff Keith Hancock was employed at the Jail as a Corrections Officer and was a patient of a medical practice affiliated with Samaritan. The amended complaint states that in 2004, Sheriff Mahar instituted a policy governing the use of sick days by Jail

employees; that employees deemed to be in violation of the policy were placed on "sick abuse" status and were denied privileges and/or required to submit a physician's note to explain their absences; that the policy was not uniformly enforced; and that Sheriff Mahar targeted Mr. Hancock and placed him on sick abuse multiple times because he was a labor union official in the Sheriffs Employees Association of Rensselaer County. In March 2013, Mr. Hancock received a letter from Samaritan stating that information about his medical care may have been improperly accessed by Jail employees, and a report indicating that Jail staff had accessed his medical records on January 9, 2009. He alleges that he had not given permission for the access, which was accomplished through the account assigned to Nurse Young. He claims that Sheriff Mahar personally directed other employees of the Sheriff's Department to access his medical records to determine whether he received treatment on the dates he was absent from work.

The amended complaint further states that plaintiff Tamera Thomas injured her hand in January 2007 in the course of her duties as a Corrections Officer at the Jail; that she sought treatment at the Samaritan emergency room; and that she missed two or three days of work due to the injury. When she applied to the County for payment of medical expenses and lost pay due to the injury, her application was denied. In March 2013, she received a letter from Samaritan stating that information about her medical care may have been improperly accessed by Jail employees, and a report indicating that Jail staff accessed her medical records on January 26, 2007, shortly after her injury and application for compensation. She alleges that she had not given permission for the access, which was accomplished through the account assigned to Nurse Young. She claims that Sheriff Mahar personally directed other employees of the Sheriff's Department to access her medical records to obtain information which was later used to deny her

compensation claim.

Plaintiffs further allege that in August 2011, plaintiff Jason Dessingue, a Corrections Officer at the Jail, underwent heart surgery and missed approximately three weeks of work. He alleges that, because he had openly supported another candidate for Sheriff, he had a "hostile relationship" with Sheriff Mahar. In March 2013, Mr. Dessingue received a letter from Samaritan stating that information about his medical care may have been improperly accessed by Jail employees, and a report indicating that Jail staff had accessed his medical records on August 23, 2011, while he was absent from work following his heart surgery. He alleges that he had not given permission for the access, which was accomplished through the account assigned to Nurse Young. He claims that Sheriff Mahar personally directed other employees of the Sheriff's Department to access his medical records to determine whether he was receiving medical treatment during the period of absence.

In the single cause of action, headed "Violation of Constitutional Rights under Color of State Law – Invasion of Privacy," plaintiffs state:

> The Fourteenth Amendment of the United States Constitution protects a citizen's right to privacy against unreasonable government intrusion. Citizens have a clearly established right in maintaining the confidentiality of medical information.
>
> The actions of the Individual Defendants violated Plaintiffs' right to privacy in their medical information, in that the Individual Defendants used the [Jail] medical computer to access the Plaintiffs' medical records to gain advantage over them in their employment with the Rensselaer County Sheriff's Department. In the alternative, the Individual Defendants, even if they did not actually access the Plaintiffs' medical records, conspired with each other to violate the Plaintiffs' right to privacy.
>
> The Individual Defendants' actions were motivated by bad faith and malice.
>
> The County of Rensselaer is directly responsible for this constitutional

violation based on the actions of their chief policy maker, Sheriff Jack Mahar.

(Paragraph numbering omitted.)

**DISCUSSION**

The parties have completed discovery. The remaining defendants move for summary judgment dismissing the claims of all three plaintiffs. As explained below, the motions are granted, and the case is dismissed with prejudice.

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the burden shifts to the non-movant to adduce evidence establishing the existence of an issue of material fact. *See Linares v. McLaughlin*, 423 Fed.Appx. 84, 86 (2d Cir. 2011). If the non-movant fails to make such a showing, the movant is entitled to summary judgment. A court deciding a summary judgment motion must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Conclusory statements, mere allegations, or unsubstantiated speculation, however, are not sufficient to defeat a summary judgment motion. *See id.*; *accord Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As stated above, plaintiffs assert a single cause of action: a Fourteenth Amendment claim of violation of their rights to privacy. It is well established that "there exists in the United States

Constitution a right to privacy protecting 'the individual interest in avoiding disclosure of personal matters.'" *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994) (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). This right to privacy, also characterized as a right to confidentiality, extends to personal medical information. *See id*. The privacy of medical information, however, has been "constitutionalized" only within "narrow parameters," such that "the interest in the privacy of medical information will vary with the condition." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 64, 66 (2d Cir. 2011). In *Doe*, the Second Circuit recognized a constitutional right to privacy with respect to a person's HIV status, noting that HIV infection is a "serious condition" and finding that, while "there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over," this is "especially true with regard to those infected with HIV or living with AIDS." 15 F.3d at 267. In *Powell v. Schriver*, the Second Circuit found a constitutional privacy right with respect to transsexualism, noting that, "[l]ike HIV status as described in *Doe*, transsexualism is [an] unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." 175 F.3d 107, 111 (2d Cir. 1999). The *Powell* court added: "[t]he excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate." *Id*. Subsequently, the Second Circuit found a protected privacy interest in medical records containing "information about a person's psychiatric health and substance-abuse history." *O'Connor v. Pierson*, 426 F.3d 187, 201 (2005).[1]

---

[1] To the extent that *O'Connor* may be read broadly to constitutionalize records concerning all medical conditions, the Second Circuit made clear in *Matson* that its holding in *O'Connor* should not be (continued...)

In *Matson*, the Second Circuit declined to extend constitutional privacy protection to plaintiff's fibromyalgia. 631 F.3d at 65-67. Citing *Doe*, *Powell*, and *O'Connor*, the *Matson* court stated that constitutional privacy protection attaches where a condition is "serious" and its disclosure would expose a person "not to understanding or compassion but to discrimination and intolerance." *Id*. at 67. The court found no record evidence of "societal discrimination and intolerance against those suffering from fibromyalgia," and concluded that, "although fibromyalgia is a serious medical condition, it does not carry with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *Id*. Accordingly, the *Matson* court upheld the dismissal of the complaint on the ground that the plaintiff did not enjoy a constitutionally-protected privacy interest regarding her condition.

As Senior District Judge Gary L. Sharpe has observed, "[d]iseases litigated thus far at the Second Circuit revealed obvious results," but the inquiry will likely become "increasingly demanding as attorneys litigate whether constitutional protection attaches to a particular disease in any given case." *Momrow v. County of Rensselaer*, 2016 WL 1261106, at *3 (N.D.N.Y. Mar. 30, 2016). In various contexts, district courts have applied *Doe*, *Powell*, *O'Connor*, and *Matson* to find a constitutional right to privacy regarding conditions such as sickle cell anemia, *see Fleming v. State Univ. of New York*, 502 F. Supp. 2d 324, 339-45 (E.D.N.Y. 2007) (decided before *Matson*), and severe psychological breakdown and depression. *See Momrow*, 2016 WL

---

[1](...continued)
so construed. 631 F.3d at 65-66. In addition, the Court does not read the unpublished decision in *Appel v. Spiridon*, 521 F.App'x 9 (Table), 2013 WL 1223250, at *2 (2d Cir. Mar. 27, 2013), as departing from *Matson*. Rather, because it concerns psychiatric records, *Appel* is consistent with *Matson* and *O'Connor*.

1261106, at *3-4; *accord Rodgers v. Rensselaer Cty. Sheriff's Dep't*, 2015 WL 4404788, at *5-7 (N.D.N.Y. July 17, 2015). District courts have declined to find constitutional protection regarding other conditions, such as rheumatoid arthritis, *see Barnes v. Abdullah*, 2013 WL 3816586, at *8 (S.D.N.Y. July 22, 2013), and sleep apnea. *See Ross v. Westchester Cty. Jail*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012).

This Court turns to evaluate whether, under *Matson*, a constitutional right of privacy attached to plaintiffs' medical conditions in the case at bar. With respect to the claim of plaintiff Keith Hancock, it is undisputed (based on the parties' Statements of Material Facts) that unauthorized access to his Samaritan records through Nurse Young's account occurred January 9, 2009, and that the records that were accessed were lab reports of tests that Mr. Hancock previously received at an outpatient facility affiliated with Samaritan. Mr. Hancock testified at his deposition that the only surgery he had undergone within the 10 years prior to his November 23, 2015 deposition was a procedure for an "inverted colon" at some time before 2009; he did not recall whether the procedure took place at Samaritan or somewhere else. He stated that he had never gone to Samaritan for any psychiatric or mental care. The Court has thoroughly reviewed Mr. Hancock's medical records from Samaritan, filed under seal on this motion.[2] The Court need not decide whether Mr. Hancock's condition as reflected in the medical records in issue would qualify as serious, because the Court finds that the condition does not carry with it "the sort of

---

[2] In his affidavit submitted in opposition to this motion, Mr. Hancock affirms:

> I have ... previously been tested and treated for a range of medical conditions including sexually transmitted diseases, diabetes, and high blood pressure at medical facilities affiliated with Samaritan Hospital. It is possible that the results of these tests and other information related to treatment for these conditions were also reviewed by the Defendants.

This speculative assertion is unsupported by Mr. Hancock's medical records from Samaritan and does not assist him in resisting this summary judgment motion.

opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *Matson*, 631 F.3d at 67. Resolving all ambiguities and drawing all factual inferences in Mr. Hancock's favor, the Court holds as a matter of law that he did not enjoy a constitutionally-protected privacy interest regarding any health condition that could have been disclosed by the alleged improper access to his medical records from Samaritan. His claims are dismissed with prejudice.

The unauthorized access to the Samaritan records of Tamera Thomas through Nurse Young's account occurred on January 26, 2007. Ms. Thomas testified at her deposition that she went to Samaritan's emergency room in January 2007 after she injured her hand at work. She testified that at other times she received gynecological treatment at Samaritan and that she gave birth to her children there. She stated that she never went to Samaritan for any psychiatric disorder.[3] Ms. Thomas' records from Samaritan have been filed under seal on this motion. Upon thorough review, the Court finds that they concern only her hand injury and routine medical concerns connected with the delivery of her babies. Regardless of whether Ms. Thomas' conditions as reflected in the records of Samaritan qualify as serious, none carries with it "the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *Id.* Resolving all ambiguities and drawing all factual inferences in Ms. Thomas' favor, the Court holds as a matter of law that she did not enjoy a constitutionally-protected privacy interest regarding any health condition that could have been disclosed by the alleged improper access to her medical records from Samaritan. Her claims are dismissed with

[3] Ms. Thomas testified that on one occasion she had a prescription for a psychiatric medication. She did not say whether this was connected with Samaritan, and there is no reference to any such prescription in her records from Samaritan. Such a speculative, unsupported assertion does not assist her in opposing defendants' motion.

prejudice.

With respect to plaintiff Jason Dessingue, it is undisputed that unauthorized access to his records through Nurse Young's account occurred on August 24, 2011. Mr. Dessingue testified that in August 2011, he underwent cardiac tests at Samaritan and that the tests revealed a blockage in his left arterial vein, which required the surgical implantation of stents. The surgery took place at Albany Medical Center. As a result, he missed three weeks of work. He also testified that he never went to Samaritan for any psychiatric or emotional illness. Mr. Dessingue's medical records from Samaritan are not part of the record; moving defendants state that he never provided authorization. This alone warrants summary judgment dismissing his claim, because no rational jury could find on this record that unauthorized access to his medical records from Samaritan disclosed a condition that is constitutionally protected. In any event, assuming that Samaritan's records disclosed the heart condition – the only medical condition to which he testified – such a condition may be serious but does not carry with it "the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *Id.* Resolving all ambiguities and drawing all factual inferences in Mr. Dessingue's favor, the Court holds as a matter of law that plaintiff did not enjoy a constitutionally-protected privacy interest regarding his medical condition. Thus, his claims are dismissed with prejudice.

Based on the undisputed record facts, the Court holds as a matter of law that plaintiffs did not possess constitutionally-protected privacy interests regarding the medical conditions in issue here. Thus, even assuming that defendants gained unauthorized access to records disclosing those conditions, plaintiffs cannot establish infringement of their Fourteenth Amendment rights to

privacy under *Matson*. Therefore, the Court need not address the other issues raised on these motions.

**CONCLUSION**

It is therefore

ORDERED that the motion for summary judgment by Elaine Young (Dkt. No. 122) is granted; and it is further

ORDERED that the motion for summary judgment by defendants County of Rensselaer, Jack Mahar, and David Hetman (Dkt. No. 123) is granted; and it is further

ORDERED that the action is dismissed in its entirety with prejudice.

IT IS SO ORDERED.

Date: August 5, 2016
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge