UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KEITH HANCOCK, TAMERA THOMAS, and JASON DESSINGUE,**

          **Plaintiffs,**

       **-v-**           **1:13-CV-1184 (NAM/CFH)**

**COUNTY OF RENSSELAER, JACK MAHAR, ELAINE YOUNG, and DAVID HETMAN,**

          **Defendants.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

Elmer R. Keach, III, Esq.
Law Offices of Elmer Robert Keach, III, P.C.
One Pine West Plaza Suite 109
Albany, New York 12205
Attorney for Plaintiffs

James A. Resila, Esq.
Carter, Conboy Law Firm
20 Corporate Woods Boulevard
Albany, New York 12211
and
William C. Firth, Esq.
Bailey, Johnson & Peck, P.C.
5 Pine West Plaza
Washington Avenue Extension Suite 507
Albany, New York 12205
Attorneys for Defendants County of Rensselaer, Mahar, and Hetman

Kevin A. Luibrand, Esq.
Luibrand Law Firm, PLLC
950 New Loudon Road
Latham, New York 12110
Attorney for Defendant Young

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

        **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

The amended complaint in this action for relief under 42 U.S.C. § 1983 claims that Defendants, while acting under color of state law, infringed Plaintiffs' Fourteenth Amendment rights to privacy in their medical records. (Dkt. No. 60, ¶¶ 47–50). This Court granted Defendants' motions for summary judgment. The Second Circuit vacated the award of summary judgment and remanded for further proceedings, including a consideration of whether qualified immunity might apply.[1] *Hancock v. County of Rensselaer*, 1:13-CV-1184 (NAM/CFH), 2016 WL 8732374 (N.D.N.Y. Aug. 5, 2016), *aff'd in part, vacated in part, and remanded*, 882 F.3d 58 (2d Cir. 2018).

Defendants again move for summary judgment. As set forth below, the summary judgment motion by Defendants County of Rensselaer, Jack Mahar, and David Hetman (Dkt. No. 149) is granted with respect to Jack Mahar and David Hetman and denied with respect to the County of Rensselaer. The summary judgment motion by Defendant Elaine Young (Dkt. No. 151) is granted.

## II. BACKGROUND

### A. The Amended Complaint [2]

At all relevant times, the three Plaintiffs were employees at the Rensselaer County Jail ("Jail"), which the Rensselaer County Sheriff's Department oversees. Defendant Jack Mahar ("Sheriff Mahar") was Rensselaer County Sheriff. Defendant David Hetman was a Lieutenant at the Jail. Defendant Elaine Young ("Nurse Young") was a Registered Nurse employed at the Jail as

---

[1] The Second Circuit affirmed the determination that Plaintiffs failed to make out a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 2721, *et seq*.

[2] All facts in this subsection are taken from Plaintiff's amended complaint. (Dkt. No. 60).

Nursing Supervisor.

The nearby Samaritan Hospital ("Samaritan") provided Jail nursing staff with access to its electronic medical records through a computer terminal in the nurses' station. The nursing staff was authorized to access only inmate records and only for authorized purposes. Nurse Young was entrusted with the password for this system and was expected to keep the password secure. Plaintiffs claim that Nurse Young instead taped the password to a drawer in her office.

Plaintiffs allege that in or around 2004, Sheriff Mahar instituted a policy to monitor and limit the use of sick days by Jail employees. Employees who violated the sick policy were placed on "sick abuse" status and were denied privileges or required to submit a physician's note explaining their absences. Plaintiffs allege that, in instituting this policy, Sheriff Mahar scrutinized the sick days of employees that he personally did not like.

The amended complaint states that Plaintiff Keith Hancock was placed on sick abuse multiple times because he was a labor union official in the Sheriffs Employees Association of Rensselaer County. In March 2013, Hancock received a letter from Samaritan informing him that his medical records may have been improperly accessed by Jail employees on January 9, 2009.

Plaintiff Tamera Thomas injured her hand in January 2007 in the course of duty and was treated at Samaritan's emergency room. Thomas applied for workers' compensation for lost pay and medical expenses in connection with this injury, but was denied. She received a letter from Samaritan in March 2013 informing her that her medical records may have been improperly accessed on January 26, 2007, which she alleges was shortly after she applied for workers' compensation.

Plaintiff Jason Dessingue underwent heart surgery in August 2011. He alleges that Sheriff

3

Mahar was hostile toward him because he endorsed another candidate for Sheriff. Dessingue received a letter in March 2013 informing him that his records may have been improperly accessed by Jail employees on August 23, 2011.

All three Plaintiffs allege that they did not give permission for the allegedly improper accesses. They further allege that Sheriff Mahar personally directed his employees, including Defendants Hetman and Nurse Young, to access Plaintiffs' records to verify their medical treatment. The amended complaint claims that, in so doing, Defendants violated Plaintiffs' Fourteenth Amendment right to privacy in their medical information. Plaintiffs seek compensatory damages from all Defendants and punitive damages from all Defendants except the County of Rensselaer ("County").

### B. Disputed Facts[3]

It is undisputed that none of Plaintiffs' accessed records revealed any psychological or emotional treatment. (Thomas Dep. 33; Dessingue Dep. 17; Hancock Dep. 16). Similarly, there is no evidence suggesting that Plaintiffs were treated for HIV or any other variety of sexually transmitted disease. (See Hancock Dep. 29–30).

The following facts remain in dispute. Defendants argue that Hancock does not know what records were accessed, nor did he confirm from Samaritan what records were accessed. (Hancock

---

[3] The facts are drawn from Defendants' and Plaintiffs' Statements of Material Facts (Dkt. Nos. 122-11, 123-4, 133); and the exhibits submitted in connection with all summary judgment motions, including the depositions of Plaintiffs (Dkt. No. 132-11, Thomas Deposition Transcript; Dkt. No. 132-5, Dessingue Deposition Transcript; Dkt. No. 132-6, Hancock Deposition Transcript), Lieutenant Karam, head of the Jail's internal affairs (Dkt. No. 132-8, Karam Deposition Transcript), Sheriff Mahar (Dkt. No. 132-9, Mahar Deposition Transcript), Nurse Young (Dkt. No. 132-12, Young Deposition Transcript), Hetman (Dkt. No. 132-7, Hetman Deposition Transcript), Hancock (Dkt. No. 132-6, Hancock Deposition Transcript), and Patricia Ahrens, a Samaritan employee familiar with the records system. (Dkt. No. 155-1, Ahrens Deposition Transcript). Furthermore, the Court has taken facts from Hancock's sworn affidavit. (Dkt. No. 132-46, Hancock Affidavit).

4

Dep. 34–35). Defendants contend that Thomas does not know what medical records were accessed, or what records could possibly have been accessed. (Dkt. No. 123-4, ¶ 9). Defendants assert that the only records that could have been seen were Thomas' treatment for an injured hand and possibly a prescription for an emotional or psychiatric condition, although Thomas never went to Samaritan for "any psychiatric related matter." (Thomas Dep. 19, 27, 33–34, 58). Plaintiffs contend, however, that although Thomas admitted she did not know what information was accessed, she knows it included her emergency room reports, each of which includes her present complaints and prior medical history, including her smoking habits and living situation. (Dkt. No. 132-16, pp. 1–2; see generally Dkt. No. 132-44). Plaintiffs also note that, according to the deposition testimony of Patricia Ahrens, the individuals accessing Plaintiffs' records could have seen all of Thomas' and Dessingue's emergency room visits and all related treatments, orders, and notes, as well as all of Hancock's lab test results.[4] (Ahrens Dep. 67, 76–77, 115–116, 117).

Defendants dispute that Plaintiffs have any evidence that any Defendant was responsible for accessing their medical records. (Dkt. Nos. 123-4, ¶¶ 12, 20, 26; 151-11, ¶¶ 18, 24). Plaintiffs contend that circumstantial evidence, including the timing of the access, supports a finding that it was Defendants who accessed the records. (Dkt. No. 156, pp. 7–9). Hancock alleges that his records were accessed while the Sheriff's Department monitored him for sick abuse and that the Sheriff suspected him of illicit drug use. (Hancock Aff. ¶¶ 4–5, 7). He also alleges that Sheriff Mahar was angry at him for resigning from an awards committee that was important to the Sheriff. (Id. ¶ 8). Plaintiffs note that someone accessed Thomas' records at about the time she applied for

---

[4] Ahrens' deposition testimony was taken in another case. (Dkt. No. 155, ¶ 5). It is nevertheless admissible for the purposes of the present motion for summary judgment. *United States v. Eisner*, 59 F. App'x 379, 382 (2d Cir. 2003).

5

worker's compensation benefits. (Thomas Dep. 66). Dessingue's records were accessed while he was on sick leave for a heart condition, and Plaintiffs allege that Hetman had on "three or four" occasions inquired why he was out and when he would return. (Dessingue Dep. 73–74).

Plaintiffs also argue that Defendants are the only people with a motive to access Plaintiffs' records. (Young Dep. 27 (stating that she did not "know who would benefit" from accessing Plaintiffs' records, but then admitting that Sheriff Mahar "may.")). Regarding evidence that Defendants were the individuals responsible for acting upon this alleged motive, Plaintiffs direct the Court to the deposition testimony of Lieutenant James Karam, the Jail's head of internal affairs. Karam testified that Sheriff Mahar instructed him to tell Samaritan to delay notifying patients whose records were accessed because the Sheriff did not want another Jail employee whose records were also allegedly accessed to find out. (Karam Dep. 34, 83). Furthermore, Sheriff Mahar testified that he had instituted a policy in which employees requesting sick leave would be directed to his secretary so that the Sheriff could maintain a more accurate list of which employees were on sick leave. (Mahar Dep. 36–37).

With respect to Nurse Young, Plaintiffs assert that she was at work on every occasion that Plaintiffs' records were accessed. (Dkt. No. 132-21; 132-24).[5] Nurse Young contends she was not at work on August 23, 2011, the day Dessingue's records were viewed, and denies accessing his or Thomas' records. (Dkt. No. 151-9; Young Dep. 26). She admits accessing Hancock's records on January 9, 2009, allegedly at his request. (Young Dep. 22). Hancock denies making such a request. (Hancock Dep. 46). Plaintiffs also allege that when Nurse Young was handed service of process in another lawsuit, she exclaimed: "The Sheriff does his dirty work and I get screwed."

---

[5] Nurse Young's records are listed under her married name of Saile. (Dkt. No. 133, p. 6 n.11).

6

(Dkt. No. 132-48). Furthermore, Nurse Young testified that the password to access Samaritan's records was kept in the desk in her office; that her office was kept locked when she was not present; and that only she, Hetman, and the watch commander had a key to her office. (Young Dep. 46, 57). Lastly, Plaintiffs note that Hetman oversaw the medical unit of the Jail. (Hetman Dep. 10).

### C. Procedural History

On February 25, 2016, Nurse Young moved for summary judgment, and on February 26, 2016 the remaining Defendants did the same (Dkt. Nos. 122 and 123). Defendants primarily argued that their conduct did not violate Plaintiffs' constitutional rights to privacy, relying on *Matson v. Board of Education of City School District of N.Y.*, 631 F.3d 57 (2d Cir. 2011). This Court agreed. The Court read *Matson* to hold that constitutional privacy protection attaches where a condition is serious and its disclosure would be "stigmatizing," that is, the disclosure would expose a person not to understanding or compassion but to discrimination and intolerance. Concluding that, under *Matson*, Plaintiffs did not possess constitutionally-protected privacy interests regarding the medical conditions in issue, the Court granted summary judgment and dismissed the action in its entirety with prejudice. *Hancock*, 2016 WL 8732374.

Upon Plaintiffs' timely appeal, the Second Circuit vacated this Court's decision and remanded the case. *Hancock*, 882 F.3d 58. The Second Circuit ruled that the seriousness and stigma attached to a disclosed medical condition are factors for consideration, not threshold questions in determining whether a third party's disclosure of a plaintiff's medical records constitutes a Fourteenth Amendment violation. Thus, the Second Circuit held that when addressing Plaintiffs' claims herein, this Court should have engaged in a balancing of interests,

7

taking into account all aspects of the individual privacy interest and the government's intent. *Id*. at 66-67. The Second Circuit reversed and remanded for further proceedings, including a consideration of whether the individual Defendants are entitled to qualified immunity. *Id*. at 69.

Accordingly, on March 19, 2018, Defendants moved for summary judgment on the ground of qualified immunity. (Dkt. Nos. 149 and 151). The Court now addresses the motions.

## III. APPLICABLE STANDARD

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the burden shifts to the non-movant to adduce evidence establishing the existence of an issue of material fact. *See Linares v. McLaughlin*, 423 F. App'x. 84, 86 (2d Cir. 2011). If the non-movant fails to make such a showing, the movant is entitled to summary judgment. A court deciding a summary judgment motion must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citation omitted). Conclusory statements, mere allegations, or unsubstantiated speculation, however, are not sufficient to defeat a summary judgment motion. *Id.; accord Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

### A. Individual Defendants' Claims to Qualified Immunity

8

Government employees are entitled to qualified immunity from civil damages liability so long as they are performing discretionary functions and do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In conducting this analysis, the Second Circuit has identified three factors relevant to whether a right was clearly established: "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 271 (2d Cir. 1996) (internal citations and quotation marks omitted). In particular, a law is clearly established in the Second Circuit if the circuit court or the Supreme Court has issued decisions that "clearly foreshadow a particular ruling on the issue." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 164 (2d Cir. 2013) (emphasis omitted).

In defining the law that must be clearly established, the Supreme Court has stressed that it is essential "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018) (internal citations and quotation marks omitted) (describing the importance of factual patterns in determining whether the law is clearly established for purposes of excessive force claims). Where courts "routinely upheld" a prior legal framework, and an appellate decision after the defendant's conduct has substantially changed that framework, qualified immunity is available. *See Fischer*, 616 F.3d at 106–08. All told, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauley*, 137 S. Ct. 548, 551 (2017) (internal citations and quotation marks omitted).

9

The Court finds that all three individual Defendants remaining in this case are entitled to qualified immunity,[6] because a free citizen's constitutional right to privacy in information concerning a non-serious, non-stigmatizing medical condition was not "clearly established" when Plaintiffs' medical records were accessed in 2007, 2009, and 2011.[7] *Fischer*, 616 F.3d at 105. Prior to the *Matson* decision in 2011, the Second Circuit had considered the right to privacy in medical information in only a few cases involving "unusual condition[s] that [are] likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." *Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999). In 1994, the Second Circuit in *Doe v. City of N.Y.* held that "[i]ndividuals who are infected with the HIV virus clearly possess a constitutional right to privacy regarding their condition," observing that "[a]n individual revealing that she is HIV seropositive potentially exposes herself not to understanding or compassion but to discrimination and intolerance." 15 F.3d 264, 267 (2d Cir. 1994). Five years later, in *Powell*, the Second Circuit cited *Doe* for the proposition that "the interest in the privacy of medical information will vary with the condition." 175 F.3d at 111. Referring to the "excrutiatingly private and intimate nature of transsexualism," the *Powell* court wrote:

---

[6] The Court notes that Nurse Young did not raise a defense of qualified immunity in her initial motion for summary judgment, nor did she argue that she was entitled to qualified immunity on appeal. *Hancock*, 882 F.3d at 69, n.5; (Dkt. No. 122). In fact, Nurse Young asserted a defense of qualified immunity only once, in her response to Plaintiff's Amended Complaint. (Dkt. No. 63, ¶ 10). However, the Court has discretion as to whether a qualified immunity defense has been waived. *Brown v. City of N.Y.*, 862 F.3d 182, 187 (2d Cir. 2017) (ruling that district court did not abuse discretion by considering qualified immunity as defense on remand when defendant had only raised defense once in "half-sentence argument" in support of summary judgment before appeal); *see Hancock*, 882 F.3d at 69, n.5. The Court therefore considers Nurse Young's defense of qualified immunity not to be waived.

[7] The Court considers this definition of the right in question to be sufficiently general so as to determine the reasonableness of Defendants' reliance on the law, but not so general as to remove essential factual considerations. *See Kisela*, 138 S. Ct. at 1152–53.

10

> Within narrow parameters, the question of whether the privacy of certain medical conditions should be constitutionalized has been answered by *Doe* in the affirmative. We now hold, as the logic of *Doe* requires, that individuals who are transsexuals are among those who possess a constitutional right to maintain medical confidentiality.

*Id*. at 111-12. *Powell* and *Doe* support the conclusion that only people with serious, stigmatizing conditions "are among those who possess a constitutional right to maintain medical confidentiality." *Id*.

The conclusion that *Doe* and *Powell* had not clearly established a constitutional right of privacy in medical conditions that are not both serious and stigmatizing is reinforced by the Second Circuit's holding in *Matson* that the plaintiff's medical condition of fibromyalgia "does not enjoy a constitutionally-protected right to privacy." 631 F.3d at 69. *Matson* observed that, "although fibromyalgia is a serious medical condition, it does not carry with it the sort of opprobrium that confers upon those who suffer from it a constitutional right of privacy as to that medical condition." *Id.* at 67. This Court interpreted *Matson* as reinforcing the holdings in *Doe* and *Powell*, as did many other courts.[8] *See, e.g., Shepherd v. Fisher*, No. 08-CV-9297(RA), 2017 WL 666213, at *15 (S.D.N.Y. Feb. 16, 2017) (finding no protected interest in back pain); *Coon v. Burkly*, No. 1:13–CV–1306, 2014 WL 1976669, at *10 (N.D.N.Y. May 15, 2014) (adopting report and recommendation finding no protected interest in free citizen's stomach and intestinal surgeries); *Barnes v. Abdullah*, No. 11 Civ. 8168(RA), 2013 WL 3816586, at *8 (S.D.N.Y. July 22, 2013) (finding no protected interest in rheumatoid arthritis); *Ross v. Westchester Cty. Jail*, 10 Civ. 3937(DLC), 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012) (finding no protected interest in sleep apnea); *Smith v. Hogan*, Civil No. 3:10-CV-1025 (JBA), 2011 WL 4433879, at *7 (D. Conn.

---

[8] Indeed, the Second Circuit in *Hancock* observed that "[s]ome clarification of *Matson* is apparently in order." 882 F.3d at 67.

11

Sept. 22, 2011) (finding free citizen had no protected interest in "disability related" medical information). Just as numerous courts have dismissed cases on the ground that the non-serious, non-stigmatizing medical conditions in issue do not warrant constitutional protection, courts have allowed other cases to proceed based upon a finding that the medical condition was serious and stigmatizing. *See, e.g., W.A. v. Hendrick Hudson Cent. Sch. Dist.*, No. 14-CV-8093(KMK), 2016 WL 1274587, at *5 (S.D.N.Y. Mar. 31, 2016) (finding protected interest in psychiatric condition); *Fleming v. State Univ. of N.Y.*, 502 F. Supp. 2d 324, 343 (E.D.N.Y. 2007) (finding protected interest in sickle cell anemia).

Thus, in the instant case, when Plaintiffs' records were accessed in 2007 and 2009 (after the *Doe* and *Powell* decisions) and 2011 (seven months after *Matson* was decided), the right to privacy in medical conditions that were not both serious and stigmatizing was not a clearly established constitutional right of which a reasonable person would have known. The Court views all relevant facts in Plaintiffs' favor. Even assuming that the individual Defendants accessed the full breadth of medical information that Ahrens described as possible, there is no evidence in Plaintiffs' records of HIV, transsexualism, mental health treatments, or any other condition that would expose them to discrimination, intolerance, hostility, opprobrium, or other social stigma, or would otherwise "provoke an intense desire to preserve one's medical confidentiality." *Powell*, 175 F.3d at 111. Therefore, even accepting Plaintiffs' allegation that Defendants acted maliciously, under what Defendants would have understood to be the applicable standard, they would not reasonably have known that their conduct violated Plaintiffs' constitutional rights. Because the constitutional rights upon which Plaintiffs rely were not clearly established at the time Defendants acted, Defendants are entitled to qualified immunity. Thus, Plaintiffs' amended

12

complaint is dismissed as a matter of law as against all individual Defendants. (Dkt. No. 60).

### B. Plaintiffs' Claims Against the County

Defendants have raised no arguments concerning the validity of the claims against the County. (See generally Dkt. No. 149). Plaintiffs argue, however, that their claims against the County should proceed to trial regardless of the Court's determination on the individual Defendants' immunity. (Dkt. No. 154, p. 15). "[T]he entitlement of . . . individual municipal actors to qualified immunity because at the time of their actions there was no clear law or precedent warning them that their conduct would violate federal law is . . . irrelevant to the liability of the municipality." *Askins v. Doe*, 727 F.3d 248, 254 (2d Cir. 2013). "Qualified immunity is a defense available only to individuals sued in their individual capacity." *Id.*

A municipality is liable for the conduct of its agent if that conduct "constitute[d] the municipality's final decisions" sufficiently to demonstrate that Plaintiffs were harmed because of County policy. *Anthony v. City of N.Y.*, 339 F.3d 129, 139 (2d Cir. 2003); *see Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (ruling that official policy of municipality must cause constitutional injury to sustain claim). A sheriff in charge of a county jail has final authority over personnel decisions at the jail such that his actions can constitute the municipality's final decisions. *Jeffes v. Barnes*, 208 F.3d 49, 60–61 (2d Cir. 2000) (ruling that informal policy of harassing and intimidating jail staff members who exercise First Amendment rights to reveal wrongdoing by coworkers is attributable to county).

Where a person with final authority makes "a deliberate choice to follow a course of action" that results in a constitutional deprivation, the municipality can be held liable. *Hines v. Albany Police Dep't*, 520 F. App'x 5, 7 (2d Cir. 2013). "However, municipal liability is

13

established only where the misconduct by the policy making official provides a basis for an inference that an official policy exists." *Williams v. Town of Southington*, 205 F.3d 1327, 1327 (2d Cir. 2000) (citing *Keenan v. City of Philadelphia*, 983 F.2d 459, 468 (3d Cir. 1992)). Nevertheless, official actors can establish municipal liability with a single action. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). Furthermore, a valid official policy that in practice is employed unconstitutionally can render the municipality liable. *Id*. at 125–26. Actions taken for personal reasons, even by high-ranking policymakers in a municipality, cannot be considered policy for purposes of municipal liability. *See Roe*, 542 F.3d at 37–38 (ruling that mayor's sexual abuse of children was not attributable to city because personal conduct cannot represent municipality). "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Id.* at 36.

An executive action violates a person's constitutional rights if it was so "arbitrary" as to "shock the conscience." *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005). "[O]nly the most egregious official conduct" meets this standard. *Id.* The egregiousness of official conduct "depends on a context-specific balancing." *Hancock*, 882 F.3d at 66. That balancing weighs the strength of the plaintiff's privacy interest against the government's reasons for performing the challenged action in the context in which the action took place. *Id*. at 68. Malicious invasions of privacy are "most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Additionally, government actors operating under a duty of confidentiality or care unreasonably invade privacy even when they only exhibit "deliberate indifference" in doing so. *O'Connor*, 426 F.3d at 203.

In this case, only Sheriff Mahar's actions and directions undertaken as Sheriff can be

14

attributed to the County. *Jeffes*, 208 F.3d at 60–61. Defendants dispute that Plaintiffs can prove any direct action on the part of Sheriff Mahar, but Plaintiffs assert that sufficient circumstantial evidence exists to create an issue of fact. (Dkt. Nos. 123-4, ¶¶ 12, 20, 26; 155, pp. 7–9; 151-11, ¶¶ 17, 24). The Court finds that a sufficient question of fact exists as to whether Sheriff Mahar directed the alleged invasion of Plaintiffs' privacy and, if so, whether his conduct may be attributable to the County. The timing of the access to Plaintiffs' records and the procedure requiring employees requesting sick leave to contact Sheriff Mahar's secretary raise questions of fact as to whether the Sheriff was personally involved in Plaintiffs' privacy violation.[9] (Thomas Dep. 66; Hancock Aff. ¶¶ 4–5, 7; Dessingue Dep. 41–43, 73–74; Dkt. No. 132-17, p. 3). Evidence that Sheriff Mahar had a personal dislike for Hancock and Dessingue raises questions of fact as to whether: (1) Sheriff Mahar directed that Plaintiffs' records be accessed; (2) Sheriff Mahar acted arbitrarily or maliciously in doing so, as opposed to in furtherance of ensuring that no employees abused sick leave; and (3) whether Sheriff Mahar's actions were the result of a personal vendetta against Plaintiffs as opposed to an unconstitutional application of the official sick leave policy. (Hancock Aff. ¶ 8; Dessingue Dep. 25–26, 51–53). Finally, in view of the Second Circuit's articulation in *Hancock* of the weight given to the relative weakness of Plaintiffs' privacy interest, the Court finds a question of fact as to whether Plaintiffs' privacy interest is sufficient to overcome Sheriff Mahar's reasons for allegedly accessing or directing his employees to access Plaintiffs' medical records. 882 F.3d at 66–68. On this record, it cannot be said that "the record taken as a

---

[9] The Court finds these disputed facts sufficient to create a question of fact, and need not reach the additional circumstantial evidence that Plaintiffs argue implicates Sheriff Mahar. The Court expresses no opinion as to the admissibility of Plaintiffs' potential hearsay evidence in the form of Karam's deposition testimony and Nurse Young's alleged exclamation upon being served with process in another case. (Karam Dep. 34, 44–46, 83; Dkt. No. 132-48).

15

whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587. Defendants' motion for summary judgment in favor of the County is therefore denied.

## V.  CONCLUSION

It is therefore

ORDERED that the motion for summary judgment by Defendant Elaine Young (Dkt. No. 151) is granted; and it is further

ORDERED that the motion for summary judgment by Defendants County of Rensselaer, Jack Mahar, and David Hetman (Dkt. No. 149) is granted with respect to Jack Mahar and David Hetman, and denied as to the County of Rensselaer; and it is further

ORDERED that the claims against Defendants Elaine Young, Jack Mahar, and David Hetman are dismissed with prejudice; and it is further

ORDERED that Plaintiffs' claims against the County of Rensselaer will be scheduled for trial.

IT IS SO ORDERED.

Date:  August 29, 2018
       Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge